**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JORGE NEPTALI MORA PEÑA, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

BUILD-SOURCE CORP., and
PHIL PAVICH,

Defendants.

---

Case No.:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Jury Trial Demanded

Plaintiff, JORGE NEPTALI MORA PEÑA (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against BUILD-SOURCE CORP. ("Corporate Defendant") and PHIL PAVICH ("Individual Defendant"; and, together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1. Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums, due to fixed salary payments without overtime premiums for hours

worked over forty; (2) unpaid wages, due to a failure to compensate for Plaintiff's eleven weeks of employment; (3) compensation for late payment of wages, (4) liquidated damages; and (5) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid overtime premiums, due to fixed salary payments without overtime premiums for hours worked over forty; (2) unpaid wages, due to a failure to compensate for Plaintiff's eleven weeks of employment; (3) compensation for late payment of wages, (4) statutory penalties due to WTPA violations; (5) liquidated damages; and (6) attorneys' fees and costs.

3. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members as required by the Federal Insurance Contribution Act ("FICA"). Defendants' paid Plaintiff and Class Members in cash, without accompanying wage statements and without filing W-2.

4. Plaintiff also alleges that, in retaining the above employer payroll tax sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391, as Plaintiff's claims arose from this District.

## PARTIES

7. Plaintiff, JORGE NEPTALI MORA PEÑA, is a resident of Queens County, New York.

8. Corporate Defendant BUILD-SOURCE CORP. is a domestic business corporation organized under the laws of New York with a principal place of business at 4 Court Square W. Ste 301, Long Island City, NY 11101 and an address for service of process located at 165-35 26th Avenue, Flushing, NY, 11358.

9. Individual Defendant PHIL PAVICH is the owner and principal of Corporate Defendant. PHIL PAVICH exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. PHIL PAVICH frequently visits the Company. PHIL PAVICH exercises—and also delegates to managers and supervisors—the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Company may complain to PHIL PAVICH directly regarding any of the terms of their employment, and PHIL PAVICH would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. PHIL PAVICH exercised functional control over the business and financial operations of Corporate Defendant. PHIL PAVICH had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

10. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

11. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL.

12. At all relevant times, Defendants were Plaintiff's employer within the meaning of NYLL §§ 2 and 651.

13. At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL §§ 2 and 651.

14. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including laborers, scaffolders, demolition workers and construction workers, among others, employed by Defendants on or after the date that is six years two-hundred-and-twenty-eight (228) days (pursuant to NY's Executive Order tolling during the COVID pandemic), before the filing of this Complaint ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid overtime premiums, due to fixed salary payments without overtime premiums for hours worked over forty; (ii) unpaid wages, due to a failure to compensate for Plaintiff's eleven weeks of employment; (iii) liquidated damages due to the lack

of payment of all owed wages and the late payment of wages; and (iv) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

18. Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including laborers, scaffolders, demolition workers, and construction workers, among others, employed by Defendants on or after the date that is six years two-hundred-and-twenty-eight (228) days (pursuant to NY's Executive Order tolling during the COVID pandemic), before the filing of this Complaint in this case as defined herein (the "Class" or "Class Members").

19. The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the

precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty (40) members of the Class.

21. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of (i) failing to pay overtime premiums, due to fixed salary payments without overtime premiums for hours worked over forty; (ii) failing to pay wages, due to a failure to compensate for Plaintiff's eleven weeks of employment; (iii) failing to pay Class Members within seven (7) calendar days after the end of their workweek; (iv) failing to provide proper wage statements per requirements of NYLL; and (v) failing to provide proper wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL.

22. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

23. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25. Defendants and other employers throughout the state violate NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

b. What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c. At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d. Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime hours;

e. Whether Defendants improperly paid Plaintiff and Class Members on a fixed salary basis without payment of overtime premiums for hours worked over forty;

f. Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members all their wages;

g. Whether Defendants compensated Plaintiff and Class Members within seven (7) days of the end of workweek;

h. Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL; and

i. Whether Defendants provided proper wage statements to employees as required under NYLL.

## **STATEMENT OF FACTS**

*Plaintiff's Wage and Hour Claims*

27. In or about March 2018, Plaintiff JORGE NEPTALI MORA PEÑA was hired by Defendants to work as a laborer for Defendants at the Bronx-Lennox hospital in New York. Plaintiff's employment with Defendants was terminated in or around December 2024.

28. During the entire duration of his employment, Plaintiff was scheduled to work Mondays through Fridays, from 7:30 a.m. to 3:00 p.m., for a total of thirty-five (35) hours each

week, excluding a daily thirty (30) minutes lunch break. Plaintiff was also scheduled to work on Saturdays twice per month with the same scheduled hours. Plaintiff always worked his scheduled hours and additional hours in excess of that schedule.

29. Plaintiff always worked beyond his scheduled hours. Plaintiff was required to stay for about fifteen (15) minutes beyond his scheduled end time on each day of his work.

30. During the entirety of his employment, Plaintiff worked between forty-two (2) and forty-three-and-one-half hours every other week. FLSA Collective Plaintiffs and Class Members were similarly scheduled to work more than forty (40) hours each week and similarly worked hours beyond their schedules.

31. Throughout his employment, Plaintiff was paid a fixed salary of one-hundred-and-eighty dollars ($180.00) per day worked. Accordingly, Plaintiff was paid nine-hundred dollars ($900) per week for a five-day workweek, and one-thousand-eighty-dollars ($1,080) per week for a six-day workweek. No matter the hours Plaintiff worked, Plaintiff was never provided any overtime premium for his hours over forty (40).

32. Throughout his employment, there was never any agreement that Plaintiff's fixed salary was intended to cover the overtime hours worked in excess of forty (40) each week. Similarly, FLSA Collective Plaintiffs and Class Members never had any agreement with Defendants that their fixed salaries would cover their overtime hours.

33. Throughout his employment, Defendants did not pay Plaintiff, FLSA Collective Plaintiffs and Class Members any overtime pay for hours worked over 40 in a single workweek. Plaintiff, FLSA Collective Plaintiffs and Class Members were not compensated for any overtime hours worked, as they were paid a fixed salary that failed to account for overtime, in violation of

the FLSA and NYLL. When Plaintiff worked a sixth day, he still received the same daily rate of $180, even though some of those hours were overtime hours.

34. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to compensate Plaintiff and Class Members the proper overtime rates for all their hours worked over forty (40) per week, in violation of the FLSA and the NYLL. Defendants' awareness and willfulness is obvious based on the fact that Defendants (i) scheduled and required Plaintiff and Class Members to work over forty (40) hours per week, and (ii) set Plaintiff's and Class Members' pay to fixed-rate salaries that did not account for overtime work.

35. Throughout his employment, Plaintiff worked as a general construction laborer whose duties involve manual labor such as: (1) carrying and moving sheetrock, cleaning up sheetrock debris and dust; (2) remodeling kitchens and bathrooms; (3) demolishing and renovating residential and commercial spaces, (4) removing garbage and debris from the job sites, (5) installing sinks, furniture, flooring, and walls and (6) providing other physical assistance on Defendants' projects.

36. Plaintiff spent more than 25% of his working time engaged in "physical labor" which qualifies him as a manual laborer under the NYLL. Similarly, Class Members were manual laborers who spent more than 25% of their working time engaging in "physical labor." Thus, Plaintiff and Class Members were entitled to their wages no "later than seven calendar days after the end of the week in which wages are earned." *See* NYLL §191.

37. However, Defendants failed to pay Plaintiff his wages within seven (7) days of the end of the week in which he earned them, in violation of NYLL and the FLSA's prompt payment requirement. Starting in or around March 2024, Defendants began making late payments to Plaintiff. Initially, payments were approximately two to three (2–3) days late from the due date for

payment. Over time, the delays increased to approximately one (1) week late, and then to two to three (2–3) weeks late. On average, Defendants' payments were approximately ten (10) days late from the due date for payment. Due to Defendants' improper withholding of compensation earned by Plaintiff and Class Members, Defendants paid Plaintiff and Class Members were paid late, in violation of the NYLL and the FLSA. Similarly, FLSA Collective Plaintiffs and Class Members' payments were similarly delayed by ten (10) or more days.

38. Plaintiff was terminated in or around December 2024 and is still owed compensation for his work for eleven weeks prior to his termination. Despite that Plaintiff worked for these eleven weeks for Defendants, Defendants refused to pay Plaintiff his rightful compensation.

39. By failing to pay Plaintiff wages for eleven weeks he worked for Defendants, Defendants violated the FLSA and the NYLL. Similarly, FLSA Collective Plaintiffs and Class Members were denied proper compensation for work they performed.

*Plaintiff's WTPA Violation Claims*

40. Plaintiff and Class Members never received wage statements that were required under NYLL. Defendants failed to provide Plaintiff and Class Members with wage notices at hiring and at dates of all wage changes thereafter.

41. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

> S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, at *21-22 (S.D.N.Y. March 20, 2020)

42. Moreover, by failing to provide wage notices and statements that disclosed Plaintiff's non-exempt status, regular hourly rate, overtime rate, and hours worked, Defendants prevented Plaintiff from identifying unpaid overtime, thereby causing the loss of overtime wages they would have otherwise claimed:

> In support of their Wage Notice and Wage Statement Claims, Plaintiffs allege that, by failing to apprise them "of their non-exempt status, regular hourly rate, overtime rate, and regular hours and overtime hours, . . . Plaintiffs were deprived of overtime due." (Id. ¶ 199). By failing to include the regular and overtime rate of pay and other required information in the wage notices and wage statements, Plaintiffs allege that Defendants denied them of both "the ability to identify their wage deficiencies earlier, preventing efforts to correct the deficiency of being wrongfully deprived of overtime pay," and "thousands of hours of overtime pay over a course of years." (Id. ¶¶ 200-201). Had Defendants complied with NYLL §§ 195(1)(a) and (3), Plaintiffs allege that they "would have immediately realized they were entitled to overtime and would have identified the wage deficiency to Defendants and rectified it." (Id. ¶ 201; see id. ¶ 200). Instead, "Plaintiffs labored under the false impression they were not eligible for [*5] overtime for years."

*Herrera v. Comme Des Garçons, Ltd.*, 2024 U.S. Dist. LEXIS 186715, at *4-5 (S.D.N.Y. Sep. 11, 2024)

43. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the

current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

44. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

45. Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

46. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, No, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury

is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

47. Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with wage statements entailed "concrete, downstream consequences" involving monetary injury. Recording of wages and hours on the W-2 forms would have increased Plaintiff's and Class Members' entitlement to Social Security benefits. Because the absence of wage statements prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

48. Courts agree that the nonreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

49. In *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993) whether the court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary

> documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

50. Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants never reported what they actually paid Plaintiff and Class Members. Another problem is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same — unavailable social security benefits.

*Plaintiff's Breach of Contract and Unjust Enrichment Claims*

51. In violating the Internal Revenue Code by failing to provide W-2 forms, Defendants breached their contract with Plaintiff and Class members to pay the employer's share of Social Security and Medicare taxes for each employee.

52. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class members.

53. As a result, Plaintiff and Class members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

54. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class members 7.65% of all their earnings from Defendants beginning six (6) years prior to the filing of this Complaint.

55. Defendants are liable to Plaintiff and Class members for failing to pay FICA taxes for the wages earned by Plaintiff and Class members.

56. Defendants knowingly and willfully failed to compensate Plaintiff for work performed during eleven weeks of his employment.

57. Defendants knowingly and willfully failed to compensate Plaintiff and Class Members within seven (7) days of the end of their workweek, as required by NYLL 191(1)(a).

58. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

**(brought individually and on behalf of FLSA Collective Plaintiffs)**

59. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

60. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

61. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

62. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

63. At all relevant times, Defendants had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek, in violation of the FLSA, due to a fixed salary scheme.

64. Defendants further had a policy and practice of failing to provide compensation for all weeks of work conducted by Plaintiff and FLSA Collective Plaintiffs, which violates the FLSA. Additionally, Defendants further had a policy and practice of delaying payment of owed compensation to Plaintiff and FLSA Collective Plaintiffs, sometimes delaying payment by up to several weeks, which violates the FLSA's provision of timely payment of wages.

65. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

66. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

67. Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under the FLSA.

68. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

69. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA

Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime wages due to fixed salary; and unpaid wages, due to a failure to compensate for Plaintiff's eleven weeks of employment; plus an equal amount as liquidated damages.

**COUNT II**

**VIOLATION OF NEW YORK LABOR LAW**

**(brought individually and on behalf of the Class)**

70. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

71. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL §§ 2 and 651.

72. At all relevant times, Defendants had a policy of improperly compensating Plaintiff and Class Member on a fixed salary basis.

73. Defendants violated Plaintiff's and Class Members' rights by failing to pay overtime wages for hours worked in excess of forty per workweek at the overtime rate that is at least one and one-half times the regular rate of pay, due to a fixed salary, in violation of the NYLL.

74. At all relevant times, Defendants knowingly and willfully violated Plaintiff and Class Members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL.

75. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members compensation for all weeks worked during their employment with Defendants, in direct violation of NYLL.

76. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements as required under the NYLL.

77. Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

78. Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants: unpaid overtime wages due to fixed salary scheme; damages for unreasonably delayed payments; unpaid wages due to improper frequency of pay; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**BREACH OF CONTRACT**

**(brought individually and on behalf of the Class)**

79. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

80. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

81. When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable

laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

82. Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file W-2s. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

**COUNT IV**

**UNJUST ENRICHMENT**

**(brought individually and on behalf of the Class)**

83. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

84. To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516 (2012) (internal quotations omitted).

85. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

86. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. A declaratory judgment that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class Members;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of overtime premiums due to a fixed salary due under the FLSA and NYLL;

e. An award of liquidated damages, interest, and legal fees as a result of Defendants' willful failure to pay Plaintiff and Class Members timely on a weekly basis as required under NYLL and the FLSA;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation for all hours worked over forty per workweek, pursuant to the FLSA;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation for all hours worked over forty per workweek, pursuant to the NYLL;

h. An award of unpaid wages, including overtime, due to Defendants' failure to pay for eleven weeks of Plaintiff's employment, pursuant to the FLSA and the NYLL;

a. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

i. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

j. An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

k. Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class; and

n. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: November 13, 2025
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*
C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs,and the Class*